UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GARRETT PAESCHKE,

    Plaintiff,

v.

GENERAL MOTORS LLC,

    Defendant.

Case No. 4:16-CV-5050-LRS

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Defendant's Motion for Summary Judgment (ECF NO. 41). Oral argument was held on October 2, 2017. Andrew Richardson and Steven Stocker participated on behalf of Defendant. Plaintiff was represented by Richard Eymann.

In this products liability action pending under the court's diversity jurisdiction, 28 U.S.C. § 1332(a), Plaintiff Garrett Paeschke brings suit against Defendant General Motors, LLC ("GM") seeking damages for violations of the Washington State Products Liability Act (WPLA) and for negligence. ECF No. 1. Plaintiff asserts theories of manufacturer liability under the WPLA for harm resulting from design defects and warning defects related to a seat heater in a 2002 Chevrolet Tahoe. The Complaint asserts the passenger seat heater was capable of reaching dangerously high temperatures sufficient to burn human skin and tissue,

ORDER - 1

the seat lacked safeguards to prevent reaching such high temperatures, and the vehicle lacked adequate warnings. Plaintiff also asserts a strict liability claim under Wash.Rev.Code §7.72.030(1)(c) for the negligent failure to provide adequate warnings. Defendant moves for summary judgment on both Plaintiff's product liability and negligence claims. For the reasons set forth below, the Motion is granted as to Plaintiff's negligence claims and denied as to the product liability claims.

I.   **LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, discovery, and affidavits demonstrate there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325. A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, the court neither weighs evidence nor assesses credibility; instead, "[t]he

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## II. BACKGROUND

In 2005, the Plaintiff, then in his early twenties, was severely injured in an automobile accident and became a partial quadriplegic as a result of his C6-7 spinal cord injury. Due to his condition, he lost sensation in his lower back, buttocks and legs, and cannot feel heat or cold below the nipple line. Plaintiff testified that he checks his skin daily for pressure sores and that he has constantly received information on how to take care of his buttocks from physicians. ECF No. 41 at 31. He testified he had only once sustained a pressure sore or decubitus ulcer. ECF No. 60, Ex. 5.

On November 26, 2013, Plaintiff went on a duck hunting trip at the Toppenish National Wildlife Refuge with his father and cousin, riding for the first time in a 2002 Chevrolet Tahoe owned by his cousin. ECF No. 41 at 32. According to Plaintiff, he was seated for approximately 8.5 hours in the front passenger seat, equipped with an electric heat feature. Plaintiff did not read the vehicle owner's manual and did not know it was equipped with heated seats. On this day, Plaintiff wore fleece pants, a camouflage shirt, shoes, TED hose (compression socks), and a jacket, but no underwear. ECF No. 50 at 4. As he sat in the seat, there was nothing else on the seat. The vehicle's engine remained running the entire duration of the

trip. While in the vehicle, Plaintiff employed pressure relieving shifts in positions every three and five minutes as he was aware of the risk of developing pressure sores. ECF No. 41 at 43. Plaintiff's movements involve leaning from side to side, leaning forward, and lifting up for 30 seconds.

The buttons controlling the seat heater are on the front passenger door near the door handle and allow the heater to operate in low, medium, and high modes. ECF No. 41, Ex. 4. Plaintiff testified at his deposition that he did not know seat heaters were there and he never purposely turned on the seat heater on. ECF No. 41 at 41. Plaintiff testified as to why he believes the seat heater was in fact turned on:

> Q: So, well, as you sit here today, can you prove that the seat heater for the front passenger position was ever on while you were sitting in it?
> A: Yes, I can, due to the fact that outside my ordinary routine, I rode in my cousin's vehicle and sustained burns.
> …
> A: I have evidence that my doctor diagnosed burns on my butt. And that the only thing that was outside of my normal routine was riding in a vehicle that had heated seats.

ECF No. 50 at 6 (SOF No. 19). *See also*, ECF No. 41 at 30; ECF No. 41 at 38. Plaintiff's human factors expert, Joellen Gill, opines that the seat heaters "can be activated through inadvertent contact…" ECF No. 54 at 61 (Ex. C at 8). In addition, the owners of the vehicles, Robert and Megan Paeschke, testified that the Tahoe's seat heater could be activated by unknowingly brushing the controls with a hand and that they themselves had inadvertently activated the seat heaters. ECF No. 50 (Plaintiff's SOF No. 45) at 11-12.

ORDER - 4

The very next morning, on November 27, 2013, Plaintiff performed his daily skin checks on his buttocks. ECF No. 41 at 42. His hand felt something that was "oozing" and what appeared to him to be a "giant blister." ECF No. 41 at 42. He immediately went to the hospital emergency room at Lourdes Medical Center presenting at 7:38 a.m. The clinical impression was of two wounds: a 3 cm circular wound with denuded skin and a 2.5 cm blister on the right buttock. The diagnosis was a superficial to deep partial thickness burn to the buttocks. ECF No. 51. Plaintiff's emergency room physician, Dr. Ronald Davis, has an independent recollection of treating Plaintiff. He states in his declaration the wound that Plaintiff received "was clearly a burn, not a pressure sore" and the burns were "clearly consistent with [Plaintiff's] stated history of how the injury occurred." ECF No. 51. According to Dr. Davis, "we determined his buttock was burned while seated for a length of time on a heated car seat." ECF No. 51 at 2.

It took months for Plaintiff to heal and he had to lie on his stomach during this time. ECF NO. 41 at 44; ECF No. 50 at 8. Plaintiff saw Dr. Simona Marie at the Kadlec Wound Healing Center between December 3, 2013 and February 1, 2014. ECF No. 52. In the declaration and letter of Dr. Marie summarizing her treatment of the Plaintiff, Dr. Marie states:

> The wound was examined during the first appointment and had an appearance consistent with a burn more than 1 week old. At this stage the wound has slough/necrotic material in it that could be consistent with another cause like pressure sore, an abrasion etc but based on the patient's history and the records

from the emergency room this wound was caused definitely by a burn…A blister is a distinguishing factor between a pressure ulcer and a burn at this stage....and also in my experience I have not seen blisters as an initial lesion in pressure ulcers…Also looking at the patient's history I noticed that he was very careful to avoid any pressure sores. The patient was not seen prior to this episode and was not seen after this episode in our clinic for any pressure sores. It is obvious that Mr. Paeschke knows how to avoid any pressure sores. Unfortunately in this case he could not avoid the episode which lead to the burn. In conclusion, based on patient's history, physical exam and medical records evaluation patient had a wound on the right buttock consistent with a burn.

ECF No. 52, Ex. 1.

Plaintiff has retained burn specialist, Cameron Bell, a registered nurse clinical nurse specialist at the Burn Clinic at UC Denver School of Medicine. Bell opines on the nature of Plaintiff's injuries and the nature of burns. ECF No. 54, Ex. 2. Her impression is that Plaintiff sustained deep partial thickness burns, putting Plaintiff at greater risk for chronic ulceration at the site which could require skin grafting in the future. *Id*.

Defendant's causation expert, Dr. Thomas Livernois of Design Research Engineering, tested the seat heater and concluded that the maximum skin temperature was 107.6°F during 60 minutes of heated seat operation and that the heated seat did not reach temperatures high enough to cause burn injuries to skin. ECF No. 41, Ex. 6 at 80-116. Plaintiff's engineering expert, Carl Finocchiaro, measured and reported temperatures recorded on the surface of the seat at various locations. ECF No. 41, Ex. 4. While he did not measure the resulting temperature

of the skin on a user, he found that the seat's surface temperature reached 100°F in six minutes and exceeded 119° after 13.5 minutes. Mr. Finocchiaro opines that "the passenger side heater system was in a defective condition as tested, in that it generated seat surface temperatures that were capable of causing burn injuries, based upon published standards that address burn injuries from contact with heated surfaces." ECF No. 53 at 2. He further opines that the difference in seat surface temperature and skin surface temperature while wearing pants is meager. ECF No. 53 at 4.

Utilizing the findings of Dr. Livernois, Defendant's expert Dr. Elizabeth Raphael, M.D. opines that the seat heaters did not burn Plaintiff and that his wounds are consistent with pressure ulcers. ECF No. 41, Ex. 3. She notes that 107.6°F "is below the thermal injury threshold" and that Plaintiff "would not have sustained a burn injury from his seat heater under the temperature conditions observed by Dr. Livernois." *Id*.

Plaintiff's human factors expert, Joellen Gill, reports that the owner's manual for the subject vehicle contained no warning about potential for burns, whereas the manual for the 2014 Silverado states: "If you cannot feel temperature change or pain to the skin, the seat heater may cause burns. To reduce the risk of burns, people with such a condition should use care when using a seat heater, especially for long periods of time." ECF No. 54, Ex. 3. Gill offers the following five opinions:

> Opinion 1: The seat heaters installed in the subject vehicle were defective and hazardous to foreseeable users.
>
> Opinion 2: It was foreseeable to General Motors that a person with decreased lower body sensation would sit in their automobile seats equipped with seat heaters with seat heaters in the on position.
>
> Opinion 3: It was foreseeable that a passenger in the front seat would be unaware that the seat heater was in the on position.
>
> Opinion 4: General Motors failed to provide any hazard communication regarding the use of these seat heaters and the potential for burns.
>
> Opinion 5: There is no scientific basis for which to blame Mr. Paeschke for this incident.

ECF No. 54, Ex. C.

### III. ANALYSIS

### A. Negligence Claim

Defendant seeks dismissal of Plaintiff's separately pleaded negligence claim because Plaintiff's claims arise under the Washington Products Liability Act (WPLA) which in Washington, preempts all common law negligence claims premised on product liability. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 409 (2012) (citations omitted). Plaintiff concedes his negligence claim, ECF No. 49 at 18. The court grants Defendant's Motion for Summary Judgment on Plaintiff's negligence claims.

///

///

## B. WPLA Claims

Defendant asserts that judgment of dismissal on all WPLA claims is appropriate because no "competent evidence" exists to establish causation, namely that: (1) the seat heater was activated; (2) the Plaintiff's injuries are burns; (3) the subject seat heater caused Plaintiff's injuries (specific causation); and (4) that the subject seat heater was capable of causing Plaintiff's injuries (general causation). The question before the court is whether the evidence and the reasonable inferences therefrom, viewed in the light most favorable to Plaintiff, show that no genuine issue of material fact exists as to whether the seat heater's design was a proximate cause of Plaintiff's injuries. The court concludes that Defendant has not met its burden to show the absence of any genuine issue of material fact.

### 1. Factual Causation Standards in Washington

Proximate cause requires both factual causation and legal causation. *Little v. Countrywood Homes, Inc.*, 132 Wash.App. 777, 778, 133 P.3d 944 (2006); *Ayers By and Through Ayers v. Johnson & Johnson Baby Products Co.*, 117 Wash.2d 747, 818 P.2d 1337 (1991). Factual causation involves a determination of some physical connection between an act and an injury. As distinct from legal causation, unless very unusual circumstances exist, a claim that an injury was caused by a manufacturer's defect presents a question of fact which can only be resolved by the trier of fact. The court will decide the question of factual causation as a matter of

law "only if the causal connection is so speculative and indirect that reasonable minds could not differ." *Doherty v. Municipality of Metropolitan Seattle*, 83 Wash.App. 464, 469 (1996).

Under Washington law, a Plaintiff may prove a product defect three ways: (1) direct proof based on the nature of the accident and the product involved; (2) opinion testimony of an expert witness; or (3) inference of a defect based on circumstantial evidence. *See Tokarz v. Ford Motor Co.,* 8 Wash.App. 645, 654, 508 P.2d 1370 (1973); *Lamphiear v. Skagit Corp.,* 6 Wash.App. 350, 356, 493 P.2d 1018 (1972).

In establishing proximate cause, a plaintiff must do more than "merely suggest the possibility that proximate cause exists" or offer speculation and conjecture as to how an accident occurred. *Browne v. McDonnell Douglas Corp.*, 698 F.2d 370, 371 (9th Cir.1982). However, proximate cause may be adduced as an inference from other facts proven. "[W]here circumstantial evidence is relied upon to prove negligence, the circumstances must, with reasonable certainty, lead to the conclusion for which they are adduced." *Sanchez v. Haddix*, 95 Wash.2d 593, 599 (1981)(citing *Arnold v. Sanstol*, 43 Wash.2d 94, 99 (1953).

**2. Exposure to the product /whether the seat heater was activated**

Defendant contends since Plaintiff "conceded during his deposition that he did not activate the heated seat system" (ECF No. 41 at 10) Plaintiff's claims ask the

jury to "to speculate" based upon the injury alone, that the heat must have been turned on.

A verdict does not rest on conjecture when founded on reasonable inferences drawn from circumstantial facts. *Prentice Packing & Storage Co. v. United Pac. Ins. Co.*, 5 Wash.2d 144 (1940)(quoting *Georgia Power Co. v. Edmunds*, 233 Ala. 273, 275 (1936))( "[A] conjecture is simply an explanation consistent with known facts or conditions, but not deductible from them as a reasonable inference…On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."). Here, although Plaintiff testified that he did not recall *intentionally* activating the heated seat system, this does not equate to direct evidence that the seat heater was not activated. Plaintiff has presented evidence from which the jury could infer that there is no other likely cause of Plaintiff's injuries other than the seat heater. This evidence includes: (1) Plaintiff's testimony that he checked daily for pressure sores, that he knew how to avoid pressure sores having had a history of only having one sore ever, and that the only thing he did out of his routine was sit in the Tahoe for 8 ½ hours the day proceeding the discovery of the injuries; (2) medical evidence from treating physicians Dr.

Davis and Dr. Marie[1] that Plaintiff's injuries were burns, not pressure sores; and (3) both lay and expert testimony that it was more like than not or substantially probable that the seat heater was inadvertently activated. Plaintiff's evidence of exposure is more than conjectural and one that must be left to the factfinder.

**3. Whether the Plaintiff's injuries are burns**

The court finds no merit in Defendant's argument that the only reasonable inference from the evidence is that Plaintiff's injuries were pressure sores not burns. There is a genuine issue of material fact and the medical evidence in the record supports a reasonable inference that the injuries were burns. Plaintiff's treating physicians both settled on a diagnoses of a burn after ruling out pressure sore based upon their expertise and the knowledge they gained by treating the Plaintiff, including physical examinations and medical histories. Any alleged failure of the Plaintiff's experts to explain why other alternative causes of injury were ruled out goes to the weight of the opinion. The jury is free to weigh the evidence to decide whether the injury was a burn or as Defendant's expert maintains, a pressure sore.

---

[1] Under the treating physician exception to Rule 26 and *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011), a treating physician may be allowed to opine even as to causation if the opinion was formed during the course of providing treatment, regardless of submission of a written expert report. Treating physicians' opinions commonly include issues of causation.

**4. Whether the injuries are burns caused by the heated seat system or pressure sores from sitting in the seat**

Defendant contends that Plaintiff is missing necessary scientific experts who can opine that Plaintiff was burned by the heated seat system. First it claims that none of Plaintiff's experts performed an adequate "type of scientific analysis," such as independent testing of the temperature of skin exposed to the seat heater. There is no bright-line rule to determine whether expert testimony is required to prove proximate cause and it is highly dependent on the specific circumstances of each case. Plaintiff has five experts who opine on issues of causation: two treating physicians; a non-treating expert in burns; an engineer who opines the seat heater system was defective as it generated seat temperatures capable of causing burn injuries; and a human factors expert who opines regarding the design and foreseeability of the risk. Plaintiff's expert evidence along with the circumstantial evidence of causation is sufficient to create a genuine issue of material fact as to the issue of specific causation. Unlike a complex toxic tort, the subject matter here is not complex. Circumstantial evidence, expert testimony and common knowledge may all provide a basis for the jury to draw a causal inference between alleged prolonged exposure to seat heaters and burns. See Am.L.Prod Liab. 3d §29:7 (Aug. 2017).

Defendant also asserts that Plaintiff lacks evidence of general causation. On this topic, defense counsel argued at the hearing that Plaintiff was missing an expert to

ORDER - 13

testify with a "reasonable degree of medical and engineering certainty" that the heated seat system was capable of causing burns. Separate proof of general causation (i.e., that the substance at issue is capable of harming individuals in the general population) is often required in cases involving the toxicity of a drug or chemical, where issues pertaining toxin exposure, dose, and epidemiological evidence make the task of proving causation more complex. This is not a toxic tort case and no Washington case supports increasing the Plaintiff's burden in this case by parsing factual causation into distinct sub-elements.

Plaintiff is not required to prove with certainty what caused his injury, only that the heated seat system is more probable than not the cause of his injuries. As indicated above, Plaintiff is permitted to prove causation through any combination of both direct and circumstantial evidence, and expert and non-expert evidence. Defendant ignores that where there is a sudden or immediate onset of symptoms, non-expert evidence in combination with expert testimony suggesting a possible cause is sufficient for a jury to infer causation without engaging in speculation. *See, e.g., Smith v. Hines*, 261 P.3d 1129, 1135 (Okla. 2011) (expert testimony that accident could have caused curvature of the spine combined with evidence "that there was no curvature of the spine before, but was shortly after, the accident" and plaintiff's evidence that "reasonably tended to exclude every other possible cause" was sufficient); *Ketcham v. Thomas*, 283 S.W.2d 642, 649–50 (Mo. 1955) (expert

opinion that collision was a "possible" cause of plaintiff's constant menstrual bleeding combined with evidence "that immediately after the accident her condition changed to constant bleeding which could not be controlled and that this constant bleeding was not common and was not a symptom ... before the collision" was sufficient to survive summary judgment on whether "the accident was the cause of the constant bleeding"); *Ideal Food Prod. Co. v. Rupe*, 76 Ariz. 175, 261 P.2d 992, 993, 994 (1953) (evidence sufficient to survive summary judgment where plaintiff put forward expert testimony that her injury, which was diagnosed after the fall at issue, was "caused by a fall or some injury"; there was "no evidence of a prior trauma or injury that could have been the cause"; and plaintiff testified "to extreme pain after the accident and that prior to this fall she had never experienced any pain in and about her left hip"); *Rodrigues v. Georgia-Pacific Corp.*, 290 Ga.App. 442 (2008) (holding that expert testimony "unequivocally stated" that chlorine substantially contributed to plaintiff's pneumonia but noting that "even if the physician's testimony here were expressed only in terms of the chlorine being a 'possible' cause of [plaintiff's] injuries, other nonexpert evidence ... [that] he was in apparent good health, he immediately became ill upon his exposure to the chlorine, which continuously worsened into the pneumonia he suffered when he presented at the emergency room" was sufficient to survive summary judgment.).

Defendant contends its expert scientific evidence disproves the heated seat system is capable of causing burns and claims Mr. Finnociaro's opinion has limited relevance because he failed to test skin surface temperatures. ECF No. 41 at 15-16. Defendant's argument calls for the court to weigh the evidence and assess the testimony presented. It is well within the province of the jury to understand the evidence and weigh the credibility of the competing experts and their results. Defendant may bring to the jury's attention the divergent methods of testing through its own expert, cross-examination, and closing argument.

5. **Failure to Warn**

Defendant asks the court to dismiss Plaintiff's claims based upon the failure to warn claiming Plaintiff has no evidence that a warning "would have prevented his alleged injury" or evidence suggesting he would have treated the vehicle differently in view of a "stronger" or "additional" warning. ECF No. 41 at 20-21. Defendant did not address Plaintiff's Response on this issue in its Reply. ECF No. 60. The record contains evidence of the Plaintiff's understanding of the danger of injury to his buttocks and steps he took to avert injury. Plaintiff also testified to his lack of familiarity with heated seat system or danger in the Tahoe. This testimony along with Ms. Gill's expert opinions regarding the lack of hazard warning, the foreseeability of hazard to users with degraded sensitivity, and the visibility of seat heater controls, creates a triable issue of fact exists as to whether the failure to post

adequate warnings was a proximate cause of Plaintiff's injuries. This conclusion is unaffected by Ms. Gill's testimony that in her opinion, the most effective response to the risk would have been a better designed seat.

## IV. CONCLUSION

Plaintiff need only show that causation may be logically and reasonably inferred from the direct and circumstantial evidence and the expert and non-expert evidence. The mere fact that other inferences adverse to Plaintiff may be drawn from Defendant's expert evidence, does not render the inference favorable to Plaintiff too conjectural or speculative for consideration by the jury. Accordingly, **IT IS HEREBY ORDERED**:

**1.** Defendant's Motion for Summary Judgment (**ECF No. 41**) is **GRANTED IN PART** and **DENIED IN PART**. The negligence claims asserted in the Complaint's "Second Cause of Action" (ECF No. 1 at ¶¶5.2-5.6) are dismissed. The remainder of the claims in the Complaint survive.

The District Court Executive is directed to file this Order and provide copies to counsel.

DATED this 11th day of October, 2017.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
SENIOR U.S. DISTRICT COURT JUDGE

ORDER - 17